# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **ANTONIO M. CROCKETT #301956,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:20-cv-00644** |
| | ) | **Judge Trauger** |
| **TONY MAYES,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM

Antonio Crockett, a pro se state prisoner, filed a petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1), to which the respondent filed an answer (Doc. No. 16), to which the petitioner filed a reply. (Doc. No. 21.) The reply seeks to add a new claim to the petition requests an evidentiary hearing. (Doc. No. 21 at 2–4, 8.) The petitioner also filed a motion to ascertain status (Doc. No. 24) and a motion to set a status conference. (Doc. No. 25.) For the following reasons, the petitioner is not entitled to relief under Section 2254, this action will be dismissed, and the pending motions will be denied as moot.

## I.        Procedural Background

A Davidson County grand jury indicted the petitioner and co-defendant Raymond Douglas Wilson, III, for first-degree felony murder and first-degree premeditated murder. (Doc. No. 14-1 at 4–7.) Following a joint trial, a jury found the petitioner guilty of felony murder and both the petitioner and co-defendant Wilson not guilty of the remaining charges. *State v. Crockett*, No. M2015-00566-CCA-R3-CD, 2016 WL 769890, at *6 & n.5 (Tenn. Crim. App. Feb. 29, 2016). The court imposed an automatic life sentence. *Id.* at *6. The Tennessee Court of Criminal Appeals

(TCCA) affirmed, and the Tennessee Supreme Court denied the petitioner's application for permission to appeal. *Id.*, *perm. app. denied* Feb. 29, 2016.

The petitioner filed a pro se petition for post-conviction relief. (Doc. No. 14-18 at 38–109.) The post-conviction court appointed counsel (*id.* at 110–13), and counsel filed an amended petition. (*Id.* at 116–40.) The court held an evidentiary hearing (Doc. No. 14-20) and denied relief. (Doc. No. 14-19 at 3–20.) The TCCA affirmed. *Crockett v. State*, No. M2018-01416-CCA-R3-PC, 2020 WL 119698 (Tenn. Crim. App. Jan. 10, 2020).

## II.    Factual Background

The TCCA summarized the evidence presented at trial, and the court will provide that summary here as context for the petitioner's claims:

> At the January 2015 trial, Jenenia Keeler, the victim's fiancée ("Ms. Keeler"), testified that on June 30, 2012, she was at her mother's house prior to a planned swimming trip when the victim called her and said that he was ready to go. As Ms. Keeler walked to the front door, her sister, Kathy Patterson, came in from outside and told her that the victim had been shot. Ms. Keeler ran outside and saw the victim "squeezing out" of the driver's side door of his SUV. Another car was parked "[r]ight beside" the victim's driver's side door such that the victim could not drive away. The victim ran across the street toward Ms. Keeler, and she saw that he had a "red spot" on the right side of his shirt. Ms. Keeler made the victim lie down, and eventually an ambulance arrived. Ms. Keeler noted that the victim "had been known to carry cash."
>
> Ms. Patterson testified that she was on her mother's front porch when she heard a gunshot and saw the victim getting out of his car. The car was "hemmed in" by a black car facing the same direction. The victim had to struggle to exit his car because he was "pinned in." Although Ms. Patterson did not see anyone inside the black car, she had seen the Petitioner, whom she knew as "Bull," driving the same car three or four times in the month preceding the shooting.
>
> Robert Rooks, the victim's cousin, testified that on the day of the shooting, he was walking through an alley when he heard a gunshot. A man ran into the alley and told Mr. Rooks that the victim had just been "shot and robbed." As Mr. Rooks ran toward the victim, he saw the victim's SUV turn right onto another road. Mr. Rooks was the first person to reach the victim, and the victim told Mr. Rooks several times, "Bull blocked me in." Mr. Rooks had known the Petitioner for ten years and stated that the Petitioner's nickname was Bull.

2

Cleo Keeler, Ms. Keeler's mother ("Mrs. Keeler"), testified that she called 9-1-1 after the victim had been shot, that she saw a black car "sitting alongside" the victim's SUV, and that although she did not see who was inside the black car, she knew it to be the car the Petitioner drove. While Mrs. Keeler was on the phone, she saw an unknown man get into the driver's seat of the victim's SUV; both the black car and the SUV drove away.

Laquitta Waters testified that she was driving in the area of the shooting and that while she was stopped at a stop sign, she heard a "big boom" and saw co-defendant Wilson standing by the front passenger's side door of the victim's SUV with a gun in his hand. A black Nissan Altima was pulled up beside the SUV such that the SUV was blocked in. The victim ran from the SUV; co-defendant Wilson got into the SUV's driver's seat; and the Altima pulled away, followed by co-defendant Wilson. Although Ms. Waters did not see the Altima's driver, she had seen the Petitioner driving the car two days previously. Ms. Waters parked her car and walked to the victim; Mr. Rooks was present and asked the victim if he knew who had "done this."

Antonio Anthony testified that on the day of the shooting, he saw the Petitioner, whom he had known for a "long time," driving a black Nissan Altima down the street. After making a u-turn, co-defendant Wilson exited the back passenger's side of the car. The Petitioner pulled up next to the victim's SUV such that the victim could not drive away; co-defendant Wilson walked up to the SUV, hit one of the windows with a gun, and ordered the victim to open the car door; and the victim "tried to pull off." Mr. Anthony heard a gunshot, then the victim jumped out of the car and ran across the street; co-defendant Wilson got into the SUV's driver's seat; and the Petitioner and co-defendant Wilson fled the area.

Laquinta Kirk, the Petitioner's girlfriend at the time of the shooting, testified that the Petitioner's nickname was Bull. After the shooting, the Petitioner picked up Ms. Kirk in his black Nissan Altima. The Petitioner began wiping down the interior of the car, including the front seats and center console. The Petitioner and Ms. Kirk drove to a parking lot in East Nashville to meet with detectives and "clear [the Petitioner's] name."

Metro Nashville Police Officer Jeremy Smith testified that the victim's SUV, which was found in an alley, had a shattered back right passenger window, and the vehicle's contents had been "rummaged through." On cross-examination, Officer Smith stated that Mr. Rooks never relayed to him the victim's statement that Bull had blocked him in.

Metro Nashville Police Officer Kenneth Wolfe, the crime scene technician who examined the crime scene and the victim's SUV, noted a "defect" in the front passenger seat headrest. He further noted that the vehicle had been "ransacked."

Dr. Erin Carney, an expert in forensic pathology, testified that the victim's cause of death was a gunshot wound to the torso and that the manner of death was homicide.

Metro Nashville Detective Johnny Crumby testified that the Petitioner's mother called him and stated "that she and the [Petitioner] had been threatened" because of his alleged involvement in the victim's murder. Detective Crumby went to the Petitioner's mother's house, which was "about one minute on foot" from the alley in which the victim's SUV was found. The Petitioner's mother confirmed that the Petitioner's nickname was Bull. Detective Crumby met with the Petitioner in a parking lot, where the Petitioner gave a recorded statement acknowledging that he was in his car at the scene and drove away afterward. However, the Petitioner denied having been involved in the shooting or theft. The Petitioner stated that the victim's car had collided with his Nissan Altima and that the victim got out of the SUV and ran away. The Petitioner showed Detective Crumby the damage to his car caused by the collision. The Petitioner stated that he drove away because he was scared and that he did not see the shooter. The Petitioner further stated that he was not trying to block in the victim and denied that anyone got out of his car and shot the victim. Although the Petitioner claimed that he was parked in the street and calling a girl at the time of the shooting, Detective Crumby reviewed the Petitioner's phone records and found no such call.

*Crockett*, 2020 WL 119698, at *2–3 (quoting *Crockett*, 2016 WL 769890, at *2–5).

## III.    Claims

The petition asserts the following claims, which the court has regrouped for clarity:

1.    The trial court erred in three ways by failing to:

    A.    Instruct the jury on the natural and probable consequences rule (Doc. No. 1 at 4);

    B.    Dismiss the indictment based on a variance between the crime alleged in the indictment and the crime of conviction (*id.* at 11);

    C.    Dismiss the indictment when the petitioner was "ambushed at conclusion of trial due to the lack of notice of what [he] was to defend against via indictment." (*Id.*)

2.    The state knowingly used the false testimony of Robert Rooks at trial. (*Id.* at 12.)

3.    Trial counsel was ineffective in two ways by failing to:

    A.    Properly litigate the petitioner's requests for a severance (*id.* at 5–6);

    B.    Effectively cross-examine Robert Rooks at trial. (*Id.* at 7.)

4

4.      Post-conviction counsel was ineffective by failing to argue that trial counsel was ineffective in two ways by failing to:

      A.      File a motion for a bill of particulars (*id.* at 11);

      B.      Hire an expert. (*Id.*)

## IV.    Legal Standard

Federal habeas relief for state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). AEDPA establishes a demanding standard for granting federal relief on claims "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 102. Under AEDPA, such a claim cannot be the basis for federal relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it

5

"incorrect or erroneous"—instead, the federal court must find that the state court's application was "objectively unreasonable." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). State-court factual determinations are only unreasonable "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)).

The demanding review of claims rejected on the merits in state court, however, is ordinarily only available to petitioners who "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted).

The procedural default doctrine is "an important 'corollary' to the exhaustion requirement," under which "a federal court may not review federal claims that . . . the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct.

2058, 2064 (2017) (citations omitted). A claim also may be "technically exhausted, yet procedurally defaulted," where "a petitioner fails to present a claim in state court, but that remedy is no longer available to him." *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)).

To obtain review of a procedurally defaulted claim, a petitioner must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014)). Cause may be established by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). To establish prejudice, "a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (quoting *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991)) (internal quotation marks omitted). And the manifest-miscarriage-of-justice exception applies "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## V.    Analysis

The respondent contends that Claims 1 and 2 are procedurally defaulted (Doc. No. 16 at 15–17, 26–31), Claim 3 is without merit under AEDPA's deferential standard of review (*id.* at 17–25), and Claim 4 is either not cognizable or procedurally defaulted. (*Id.* at 25–26.) As explained below, the court agrees, and it further concludes that it would be futile to allow the petitioner to amend the petition to add the proposed claim in the reply.

7

## A.    Claim 1—Trial Court Errors

In Claim 1, the petitioner asserts that the trial court erred in three ways. (Doc. No. 1 at 4, 11.) The petitioner did not present these claims to the TCCA on direct or post-conviction appeal, and no state remedies remain. *See* Tenn. Code Ann. § 40-30-102(c) (establishing Tennessee's "one-petition" limitation on post-conviction relief); *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Fletcher v. Tennessee*, 951 S.W.2d 378, 380–81 (Tenn. 1997)) (explaining the three narrow circumstances in which a state prisoner may file a motion to reopen post-conviction proceedings, none of which apply here). Accordingly, Claim 1 is procedurally defaulted.

Liberally construing the petition, the petitioner may argue that he defaulted all or part of this claim due to the ineffective assistance of counsel on direct appeal (Doc. No. 1 at 4) or during his post-conviction proceedings. (*Id.* at 8.) But the petitioner cannot rely on these allegations as cause to excuse the default. First, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Hodges*, 727 F.3d at 530 (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). That is the case with the petitioner's allegation of ineffective assistance on direct appeal. And second, ineffective assistance of post-conviction counsel can only act as "cause to overcome the default of a single claim—ineffective assistance of trial counsel." *See Davila*, 137 S. Ct. at 2062–63 (discussing *Martinez v. Ryan*, 566 U.S. 1 (2012); *Trevino v. Thaler*, 569 U.S. 413 (2013)). A claim of trial court error is not a claim of ineffective assistance of trial counsel. *See Abdur'Rahman v. Carpenter*, 805 F.3d 710, 716 (6th Cir. 2015) (collecting cases) ("*Martinez* applies only to claims of ineffective assistance of trial counsel, not trial errors . . . ."). Accordingly, Claim 1 is procedurally defaulted without cause, and it is not subject to further review.

8

In the reply, the petitioner asserts that Claim 1.A is actually a claim of ineffective assistance of trial counsel rather than a claim of trial court error. (Doc. No. 21 at 2–4.) That is, the petitioner asserts that trial counsel was ineffective for failing to request a jury instruction on the natural and probable consequences rule. (*Id.*) The court liberally construes this aspect of the reply as a request to amend the petition. At this stage in the proceedings, the petitioner requires the court's leave to amend the petition. *See* Fed. R. Civ. P. 15(a)(1) (establishing the circumstances in which a party may amend as a matter of course, none of which apply here). Courts "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In evaluating the interests of justice, courts consider several factors, including 'undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'" *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (quoting *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998)). Here, it would be futile for the petitioner to add the proposed claim because it does not survive the AEDPA's demanding standard of review for claims adjudicated on the merits in state court. The court will address the substance of this proposed claim alongside the petitioner's other exhausted ineffective-assistance claims below. *See* Section V.C.3.

**B. Claim 2—Knowing Use of False Testimony**

In Claim 2, the petitioner asserts that the state knowingly used the false testimony of Robert Rooks at trial. (Doc. No. 1 at 12.) Specifically, the petitioner argues that Rooks' trial testimony contradicted a prior statement he made to police officer Jeremy Smith. (*Id.*) He also incorporates attachments to the petition seeming to imply that the state knowingly presented false testimony because the trial testimony of Rooks and Antonio Anthony was inconsistent. (*Id.*; Doc. No. 1-1 at 22–37.) Again, however, the petitioner did not present this claim to the TCCA at any point, and he

9

can no longer do so. *See* Tenn. Code Ann. § 40-30-102(c); *Hodges*, 727 F.3d at 530 (citing *Fletcher*, 951 S.W.2d at 380–81). The petitioner's only potential allegation of cause for this claim is his general allegation of post-conviction counsel's ineffectiveness (Doc. No. 1 at 8), but that allegation is unavailing because this is not a claim of ineffective assistance of trial counsel. *See Abdur'Rahman*, 805 F.3d at 714 (explaining that *Martinez* does not apply to "claims of *Brady* violations and prosecutorial misconduct").

The court notes that a knowing-use-of-false-testimony claim is a type of *Brady* claim, and as with a general *Brady* claim, it is sometimes preferable to resolve procedural-default issues for this type of claim by addressing the merits. *See Brooks v. Tennessee*, 626 F.3d 878, 894–96 (6th Cir. 2010) (taking this approach). But a petitioner only "shows 'cause'" for the procedural default of a *Brady* claim "when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence." *Banks v. Dretke*, 540 U.S. 668, 691 (2004). And here, the petitioner does not allege that the state withheld Rooks' pretrial statement to Officer Smith. Indeed, in the motion for new trial and renewed motion for judgment of acquittal filed by counsel after trial, counsel acknowledges receiving Smith's report including Rooks' statement from the state "in pretrial discovery." (Doc. No. 14-1 at 97.) Accordingly, the petitioner has not demonstrated cause to overcome the default of Claim 2, and it is not subject to further review. *See Norris v. Schotten*, 146 F.3d 314, 334–35 (6th Cir. 1998) (explaining that it "does not pose any constitutional problem" when a witness' "testimony could be impeached in various ways," as "there would be no need for a jury if trials did not contain such inconsistencies").

Alternatively, notwithstanding any default, Claim 2 also fails on the merits for the straightforward reason that the petitioner has not demonstrated the falsity of any testimony. "To prove that the prosecutor's failure to correct false testimony violated due process rights, a

petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir. 2009) (citations omitted). The petitioner seems to argue that Rooks' trial testimony was false in two ways: first, he testified that the victim told him "several times, 'Bull blocked me in,'" *Crockett*, 2016 WL 769890, at *3, while Officer Smith testified that Rooks "did not tell him the victim" made that statement *Id.* at *5; and second, both Rooks and Antonio Anthony testified that they were the first person to arrive to the victim after he had been shot. *Id.* at *3; (Doc. No. 14-4 at 93–94.) As to the first alleged instance of false testimony, however, the petitioner's investigator conducted an interview with Rooks about two years before trial, and Rooks told the investigator that Officer Smith's summary of his prior statement "did not include all of the information he had provided regarding statements made by" the victim, including the statement "Bull blocked me in." (Doc. No. 14-1 at 104.) And as to both alleged instances of false testimony, "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Peoples v. Lafler*, 734 F.3d 503, 516 (6th Cir. 2013) (quoting *Brooks*, 626 F.3d at 894–95). For all of these reasons, Claim 2 will be denied.

### C.    Claim 3—Ineffective Assistance of Trial Counsel

In Claim 3, the petitioner asserts that trial counsel was ineffective in two ways. The respondent acknowledges that the petitioner exhausted this claim on post-conviction appeal. (Doc. No. 16 at 17.) The federal law governing the adequacy of a criminal defendant's representation is defined in *Strickland v. Washington,* 466 U.S. 668 (1984). *Premo v. Moore*, 562 U.S. 115, 121 (2011). The TCCA correctly identified this standard before rejecting this claim on the merits. *Crockett*, 2020 WL 119698, at *9–12.

Under *Strickland*, a petitioner must show (1) deficient performance and (2) prejudice to the defendant. *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland*, 466 U.S. at 687). Counsel's performance is deficient where it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Further, when a petitioner raises an exhausted claim of ineffective assistance in a federal habeas petition, "[t]he pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. This amounts to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Pinholster*, 563 U.S. at 190).

### 1.     Claim 3.A—Requests for a Severance

In Claim 3.A, the petitioner asserts that counsel was ineffective for failing to assert the proper basis for severance before trial and failing to request a severance during trial. (Doc. No. 1 at 5–6.) As background, the petitioner's counsel filed two pre-trial "motions to sever his trial from that of co-defendant Wilson." *Crockett*, 2020 WL 119698, at *1. The first motion "was based upon a potential confrontation issue if the defendants' statements to law enforcement were introduced." *Id.* (citing *Crockett*, 2016 WL 769890, at *1). This motion was resolved when the state agreed not

to introduce any statement from a defendant that referenced the other defendant. *Crockett*, 2016 WL 769890, at *1. The second motion was primarily "based upon the Petitioner's right to a speedy trial," but it also referenced "a disparity in the proof against the defendants," the defendants' "mutual animosity and resentment," and the possibility that "one of the defendants' out-of-court statements led to the discovery of incriminating evidence against the other." *Crockett*, 2016 WL 769890, at *1. The trial court denied this motion, noting that "pending DNA testing was a proper basis for a continuance" and that "animosity between the two defendants was an insufficient reason to grant a severance." *Id.* at *2. The court also found that "considerations of judicial economy weighed in favor of a joint trial" and that the petitioner "was not prejudiced by the delay" because his continued incarceration was due to him "serving another sentence" and having "multiple cases pending before the court." *Id.* In its written order, however, the court stated that it would "revisit" its severance ruling if "a situation arises at trial . . . that necessitates severing the Defendants pursuant to [Tenn. R. Crim. P.] 14(c)." (Doc. No. 14-1 at 31–32 (footnote omitted).)

Counsel did not request a severance during trial, but he did raise the severance issue in a motion for new trial and on direct appeal. At those two stages, counsel renewed the speedy trial argument, and he offered a new argument that the court should have ordered a severance during trial when it excluded a portion of the victim's "dying declaration" to Robert Rooks that may have implicated the petitioner's co-defendant, preventing counsel from effectively impeaching Rooks on cross-examination. (Doc. No. 14-1 at 96–98); *Crockett*, 2016 WL 769890, at *7. The TCCA summarized its direct appeal ruling on these issues as follows:

> Relative to severance under a speedy trial analysis, this court concluded that although there was a delay of twenty-nine months between the Petitioner's arrest and the trial and the delay was in part due to the State's negligence in failing to order DNA testing, the Petitioner did not assert his right to a speedy trial for twenty-three months and did not suffer prejudice as a result of the delay. This court noted

13

that the Petitioner was serving a sentence from a previous case during the pendency of this trial and that his ability to present a defense was not impaired.

Relative to severance during the trial, after a jury-out hearing, the trial court found that a portion of the victim's dying declaration regarding "the same guy" who robbed the victim previously violated Tennessee Rule of Evidence 404(b). Mr. Rooks subsequently testified that "the only thing" the victim said to him was "Bull blocked [him] in." The Petitioner did not object or renew his motion to sever. This court concluded that because the Petitioner did not renew his severance motion or make a new motion to sever during the trial, he had waived consideration of this claim. However, this court examined the issue for plain error and concluded that a clear and unequivocal rule of law had not been breached. In particular, it was not clear that the victim's excluded statement referred to co-defendant Wilson, that co-defendant Wilson would have consented to a severance, or that the statement was necessary to a fair determination of the Petitioner's guilt or innocence. This court noted that "the fact that the victim had also implicated co-defendant Wilson . . . would have bolstered and further corroborated the testimony of [Antonio] Anthony, who identified both [defendants]." Moreover, this court further noted that the possible references to co-defendant Wilson would not have changed the victim's identifying the Petitioner by name in the dying declaration.

*Crockett*, 2020 WL 119698, at *4 (quoting *Crockett*, 2016 WL 769890, at *7–11).

On post-conviction appeal, as here, the petitioner argued that trial counsel was ineffective for failing "to assert a proper basis for severance pretrial or renew the motion to sever at trial." *Crockett*, 2020 WL 119698, at *11–12. The TCCA rejected the petitioner's claim on deficiency and prejudice grounds. This court will proceed directly to the prejudice component.[1] *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was

---

[1] This court need not decide whether the TCCA's deficiency ruling satisfies AEDPA's deferential standard of review to say that the ruling appears flawed. The state court assumed that counsel's "decision not to renew the severance motion during trial was a tactical one" because the petitioner did not specifically ask about the decision at the evidentiary hearing, and "trial counsel did not indicate [otherwise]." *Crockett*, 2020 WL 119698, at *12 (citing *Hawkins v. State*, No. W2016-00723-CCA-R3-PC, 2017 WL 2829755, at *7 (Tenn. Crim. App. June 30, 2017); *State v. Sexton*, No. M2004-03076-CCA-R3-CD, 2007 WL 92352, at *5 (Tenn. Crim. App. Jan. 12, 2007)). But as post-conviction counsel highlighted in the appeal brief, trial counsel admitted during the hearing on the motion for new trial that it was his "failure" to not renew the request for a severance during trial. (Doc. No. 14-22 at 25–26.) There, trial counsel stated that he "had lost [the severance] issue pretrial, and [he] did not renew it during the course of the trial," even though he knew a severance could be granted at any time. (Doc. No. 14-10 at 29.) The TCCA did not address trial counsel's statements at the motion-for-new-trial hearing, despite basing its assumption of reasonable assistance on "the absence of testimony" regarding counsel's rationale. *Crockett*, 2020 WL 119698, at *12.

14

deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

The TCCA first clarified that "the focus of [the petitioner's] ineffective assistance claim" was his argument that "a severance should have been granted based upon the exclusion of Mr. Rooks's testimony relating the portion of the victim's dying declaration identifying the shooter as the 'same guy.'" *Crockett*, 2020 WL 119698, at *11. That characterization is consistent with the petitioner's post-conviction appeal brief. (*See* Doc. No. 14-22 at 23–26.) The TCCA's prejudice ruling on this point was as follows:

> [T]he Petitioner has not proven prejudice from the joint trial because the Petitioner has not argued grounds upon which a severance would have been granted. Although the Petitioner states that he could have more thoroughly cross-examined Mr. Rooks had the 404(b) evidence relative to co-defendant Wilson not been excluded, the variances in Mr. Rooks's testimony did not change his consistent recollection of the victim's identifying the Petitioner as having blocked him in.

> The Petitioner contends, without citation to authority, that because co-defendant Wilson was not convicted of the victim's murder, prejudice has been established because it is "inherently and fundamentally unfair" that the Petitioner was found to be criminally responsible for a murder for which no one was convicted. The Petitioner avers that a separate trial would have resulted in his acquittal.

> The Petitioner's argument is without merit in this regard, as evidenced by this court's analysis of the severance issue and the sufficiency of the evidence on direct appeal. No matter the identity of the shooter, a reasonable trier of fact could have found that the Petitioner was a participant in the theft of the victim's SUV and that as a result, the Petitioner was criminally responsible for the victim's death.

> We note that co-defendant Wilson's defense theory at trial was one of mistaken identity. In contrast, the Petitioner did not dispute that he was present at the crime scene; he only sought to introduce doubt as to his participation in the crime. We further note that the Petitioner was acquitted of premeditated first-degree murder and that this court concluded on direct appeal that the evidence was sufficient to support the felony murder conviction. Multiple witnesses and the victim identified the Petitioner as having driven the car that blocked in the victim's SUV; Mr. Anthony saw the shooter exit the Petitioner's car; the victim's SUV was found near the Petitioner's mother's house; and the Petitioner wiped down the interior of his car before speaking to police. The Petitioner has not established that the joint trial prejudiced him, and he is not entitled to relief on this basis.

15

*Crockett*, 2020 WL 119698, at *12.

This ruling was reasonable. The petitioner argues that, if he was not subject to a joint trial with co-defendant Wilson, then the trial court would not have excluded the victim's dying declaration to Rooks potentially implicating co-defendant Wilson as the shooter. As the TCCA noted, however, even without Rooks' testimony, several other witnesses testified that they saw a car blocking the victim's car at the scene of the shooting. *Crockett*, 2016 WL 769890, at *2–4 (Jenenia Keeler, Kathy Patterson, Cleo Keeler, Laquitta Waters, Antonio Anthony). Many of these witnesses identified the blocking car as one known to be driven by the petitioner. *Id.* at *3 (Kathy Patterson, Cleo Keeler, Laquitta Waters, Antonio Anthony). The petitioner himself gave a statement to police acknowledging being in his car at the scene of the shooting. *Id.* at *5. And Antonio Anthony, in particular, testified that he witnessed the entire incident and identified both the petitioner and co-defendant Wilson. *Id.* at *4. Given the significant testimony corroborating the victim's dying declaration to Rooks that the petitioner "blocked him in," there is not a reasonable probability that the result of the petitioner's trial would have been different if Rooks had also been allowed to testify regarding the victim's dying declaration identifying the shooter. *See Crockett*, 2016 WL 769890, at *13 (rejecting the petitioner's insufficient-evidence claim based on the theory of criminal responsibility, in part, because a reasonable jury could find that the petitioner "assisted in the commission of the offense by purposefully blocking the victim's car so that the victim could not escape the gunman"). The petitioner also does not identify any argument counsel should have made before trial that would have resulted in a severance. Accordingly, it was not unreasonable for the TCCA to conclude that the petitioner failed to demonstrate prejudice resulting from trial counsel's asserted failure to secure separate trials for the petitioner and co-defendant Wilson. Claim 3.A will be denied.

16

### 2.    Claim 3.B—Cross-Examination of Robert Rooks

In Claim 3.B, the petitioner asserts that trial counsel was ineffective for failing to effectively cross-examine Robert Rooks, including by impeaching his credibility using Officer Smith's summary of Rooks' prior statement. (Doc. No. 1 at 7.) On post-conviction appeal, the petitioner argued that counsel should have called the defense investigators—John Terry and Johnny Lawrence—to demonstrate Rooks' lack of consistency. *Crockett*, 2020 WL 119698, at *5, 10. The TCCA rejected this claim on deficiency and prejudice grounds, and this court again focuses on prejudice.[2] *See Strickland*, 466 U.S. at 697.

The TCCA ruled:

> We agree with the post-conviction court and the State that the Petitioner has not proven prejudice in regard to trial counsel's examination of Mr. Rooks. The Petitioner's involvement in the murder was not established by Mr. Rooks alone. Mr. Anthony identified the Petitioner as the driver of the Altima, and multiple witnesses stated that they knew the Altima belonged to the Petitioner. Trial counsel noted at the post-conviction hearing that the Petitioner's car was distinctive and known in the neighborhood. In addition, Ms. Kirk testified that the Petitioner wiped down the inside of the car before speaking to police. Although variations existed between the defense interviews and Mr. Rooks's trial testimony, they were not material. The Petitioner is not entitled to relief on this basis.

*Crockett*, 2020 WL 119698, at *11.

This ruling was reasonable. As discussed above, several witnesses aside from Rooks tied Petitioner to the scene of the shooting. *See Crockett*, 2016 WL 769890, at *2–4 (Jenenia Keeler, Kathy Patterson, Cleo Keeler, Laquitta Waters, Antonio Anthony). Indeed, the petitioner told police that he was in his car at the scene, and Antonio Anthony corroborated the petitioner's involvement. *Id.* at *4–5. On cross-examination, trial counsel elicited testimony from Officer

---

[2] The TCCA found that the petitioner failed to demonstrate deficiency because he did not present Terry and Lawrence as witnesses at the evidentiary hearing. *Crockett*, 2020 WL 119698, at *10 (citing *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. Apr. 11, 1990)). However, the TCCA went on to consider "exhibits to the motion for a new trial hearing" that "arguably contain[ed] the substance of what Mr. Terry and Mr. Lawrence would have testified to at trial." *Id.*

Smith to undermine Rooks' credibility—namely, that "Rooks did not tell him the victim said, 'Bull blocked me in.'" Crockett, 2016 WL 769890, at *5. But again, as discussed above, Rooks' trial testimony on this point was consistent with what he told Investigator Terry about two years before trial—that Smith's summary of his prior statement "did not include all of the information he had provided regarding statements made by" the victim, including the statement "Bull blocked me in." (Doc. No. 14-1 at 104.) Rooks also gave a consistent statement on this point to Investigator Lawrence about six months before trial. (*Id.* at 113, 118–19, 121, 124.) It therefore would have served no purpose to call the defense investigators to impeach Rooks in this regard. And the variations that did exist between Rooks' trial testimony and his prior statements to Investigators Terry and Lawrence did not undermine the key aspects of his testimony. *Crockett*, 2020 WL 119698, at *10 (footnote omitted) ("The main differences between Mr. Rooks's trial testimony and his interviews with defense investigators involved where Mr. Rooks was when he initially heard the victim had been shot and whether Mr. Rooks was the first person to speak to the victim."). Accordingly, it was reasonable for the TCCA to conclude that the petitioner failed to demonstrate prejudice resulting from trial counsel's cross-examination of Rooks.

### 3.      Proposed Claim Regarding Natural and Probable Consequences Rule

In the reply, the petitioner seeks to add a claim that that trial counsel was ineffective for failing to request a jury instruction on the "natural and probable consequences rule." (Doc. No. 21 at 2.) This "rule underlies the doctrine of criminal responsibility and is based on the recognition that aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put into motion." *State v. Howard*, 30 S.W.3d 271, 276 (Tenn. 2000) (citations omitted). The petitioner raised this claim on post-conviction appeal, and the TCCA rejected it on prejudice grounds:

> This court has concluded that a natural and probable consequences instruction is not required in felony murder cases because the felony murder statute imposes liability for deaths occurring during the commission or attempted commission of enumerated felonies, regardless of the foreseeability of such deaths. *State v. Winters*, 137 S.W.3d 641, 659 (Tenn. Crim. App. 2003). However, the Petitioner was also charged with first-degree premeditated murder under a theory of criminal responsibility. Pursuant to *Howard*, the jury should have been instructed on the natural and probable causes rule relative to the premeditated first-degree murder charge. Trial counsel rendered deficient performance by not requesting this required jury instruction. However, the Petitioner was acquitted of first-degree premeditated murder and, therefore, suffered no prejudice. The Petitioner is not entitled to relief on this basis.

*Crockett*, 2020 WL 119698, at *13.

This ruling was reasonable. Trial counsel's deficiency in failing to request this jury instruction did not prejudice the petitioner because, under applicable Tennessee law, the petitioner was not convicted of a charge for which the instruction was required. *See Guerrero v. Hall*, No. 20-5256, 2020 WL 8773047, at *2 (6th Cir. Sept. 16, 2020) (citing *Winters*, 137 S.W.3d at 659) (denying certificate of appealability for claim of ineffective assistance based on failure to request jury instruction on natural and probable consequences rule where, as here, the TCCA found that failure to give the instruction was error as it related to first-degree premeditated murder, but that error did not prejudice the petitioner because the "premeditated-murder convictions merged with felony-murder convictions, which did not require the giving of the natural-and-probable-consequences instruction"). Accordingly, it would be futile to amend the petition to add this assertion of trial counsel ineffectiveness.

### D. Claim 4—Ineffective Assistance of Post-Conviction Counsel

Finally, in Claim 4, the petitioner asserts that post-conviction counsel was ineffective in two ways. (Doc. No. 1 at 11.) As a stand-alone claim for habeas corpus relief, this claim is barred by statute and long-standing precedent. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for

19

relief in a proceeding arising under section 2254."); *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings.") (citations omitted).

Moreover, the petitioner is not entitled to relief based on the allegations underlying this claim. The petitioner asserts that trial counsel was ineffective for failing to file a motion for a bill of particulars and hire an expert, and that post-conviction counsel was ineffective in turn for failing to raise these claims. (Doc. No. 1 at 11.) These claims of trial counsel ineffectiveness are procedurally defaulted because the petitioner did not present them to the TCCA, and he can no longer do so. *See* Tenn. Code Ann. § 40-30-102(c); *Hodges*, 727 F.3d at 530 (citing *Fletcher*, 951 S.W.2d at 380–81). For the petitioner's assertion of post-conviction ineffectiveness to act as the cause necessary to excuse this default, the claims of trial counsel ineffectiveness must be "substantial." *Abdur'Rahman*, 805 F.3d at 713 (quoting *Martinez*, 566 U.S. at 17). "A substantial claim is one that has some merit and is debatable among jurists of reason." *Id.* (citing *Martinez*, 566 U.S. at 14). "In the converse, a claim is insubstantial when 'it does not have any merit'" or "'is wholly without factual support.'" *Porter v. Genovese*, 676 F. App'x 428, 432 (6th Cir. 2017) (quoting *Martinez*, 566 U.S. at 15–16).

The two claims of trial counsel ineffectiveness are entirely unsupported by facts. The petitioner alleges that a bill of particulars would have required the state to "adequately identify the offenses charged." (Doc. No. 1 at 11.) But the count of the indictment on which the petitioner was convicted clearly charged him with killing the victim "during the perpetration of or attempt to perpetrate theft, in violation of Tennessee Code Annotated § 39-13-202." (Doc. No. 14-1 at 6.) The petitioner does not explain what information the state could have provided through a bill of particulars that counsel did not already have through discovery, or how that information had a

reasonable probability of resulting in a different trial outcome. Likewise, the petitioner alleges without explanation that counsel should have hired an expert to "combat the state's case and state's experts." (Doc. No. 1 at 11.) But the petitioner does not explain what kind of expert counsel should have retained or how expert testimony would have helped his case. The only state expert at trial testified that "the victim died as a result of a gunshot wound to the torso and that the manner of death was homicide," *Crockett*, 2016 WL 769890, at *5—conclusions that the petitioner does not attempt to undermine in any way. Accordingly, the two allegations of trial counsel ineffectiveness underlying Claim 4 are "merely conclusory allegations of ineffective assistance" that "are insufficient to state a constitutional claim." *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) (citing *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998)). For all of these reasons, Claim 4 will be denied.

## VI.    Request for Evidentiary Hearing

In the reply, the petitioner requests an evidentiary hearing "to address the merits of the ineffective assistance of counsel claims addressed in all pleadings before the Court." (Doc. No. 21 at 8.) But the court cannot consider new evidence on the ineffective-assistance claims adjudicated on the merits in state court. *See Hodges*, 727 F.3d at 541 (quoting *Pinholster*, 563 U.S. at 180–81) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). And the insubstantial, factually unsupported claims of trial counsel ineffectiveness underlying Claim 4 do not warrant an evidentiary hearing either. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). Accordingly, the court denies the petitioner's request for an evidentiary hearing.

## VII.    Conclusion

For these reasons, the petitioner is not entitled to relief under Section 2254 and this action will be dismissed. The petitioner's motion to ascertain status (Doc. No. 24) and motion to set a status conference. (Doc. No. 25) will be denied as moot.

Because this is a "final order adverse to" the petitioner, the court must grant or deny a certificate of appealability (COA). Habeas Rule 11(a). A COA requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition [is] denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

For the reasons stated throughout the court's analysis, the court concludes that the petitioner has not satisfied these standards and will deny a COA.

An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge